CARL M. WALKER, Administrator, Appellee, v. W. B. CHASE, Appellant.

**PHYSICIANS AND SURGEONS:** Negligence—Prescribing Unlabeled Tablets. A physician is not negligent, in a legal sense, in leaving with an adult attendant, and in a cup on a table of ordinary height, near the bedside of an adult patient, unlabeled, attractively colored, and commonly used medicinal tablets, which the said attendant

necessarily knew would be dangerous to *anyone*, if administered in doses in excess of the directions then and there given by the physician. So held where an 18-months-old child later discovered and ate the tablets, and died as a result thereof.

*Appeal from Jasper District Court.*—CHARLES A. DEWEY, Judge.

NOVEMBER 14, 1922.

ACTION for damages by an administrator for alleged wrongful death of his intestate, caused by the negligence of the defendant. The answer was a general denial. There was a verdict and judgment for the plaintiff for $3,500. The defendant appeals.—*Reversed.*

*Dutcher & Hambrecht*, for appellant.

*M. J. Carey* and *R. R. Mowry*, for appellee.

EVANS, J.—The decedent, Louise Walker, was a child 18 months of age. She lost her life on April 5, 1919, as a result of eating certain pills or tablets which had been prescribed for an adult person. The plaintiff was her father, and is her duly appointed administrator. The defendant was a regular practicing physician, who was called to visit the aunt of the decedent. He prescribed certain tablets for the patient, who was adult, and left 12 or 15 of such tablets with the patient and her attendants, with directions that the patient take *one* every four hours. This was on April 4th. On the following day, the decedent, without the knowledge of her parents, got the custody of the tablets and ate them all save two, and her death resulted therefrom. This is not a malpractice case. The charge is not that of malpractice, but that the defendant was negligent in having so exposed the tablets that the child could discover them and be attracted thereby, and in that he failed to give warning of the alleged dangerous character of the tablets, in that each contained a small quantity of strychnine. The allegations of the petition on the subject of negligence were as follows:

"That on or about the 4th day of April, 1919, the defend-

ant, while at the home of J. W. Walker in Prairie City, Iowa, and while attending Laura Walker as her physician, placed some tablets containing poison in a teacup on a table, without labeling the same or giving any caution as to their dangerous character. That the defendant well knew that said tablets contained drugs dangerous and harmful to the human system, and knew that plaintiff's intestate was wholly ignorant of their harmful and dangerous character, but negligently and wantonly placed said tablets within the reach of said Louise Walker. That said Louise Walker was present in the room when said tablets were left, as aforesaid, by the defendant, which facts were well known to him. That said tablets were pink in color, and constituted an attractive danger to said Louise Walker, who was then about 17 months of age. That, on or about the 5th day of April, 1919, while said tablets were still in the place in which the defendant left them, said Louise Walker ate a number of the tablets, which caused her to go into convulsions, from which she died within about an hour. That the negligence of the defendant in placing said tablets within the reach of said Louise Walker, without labeling the same or giving any warning or caution as to their poisonous or dangerous character, was the direct and proximate cause of the death of said Louise Walker, who was free from contributory negligence.''

The evidence for the plaintiff discloses that the defendant was called about 6 o'clock on April 4th, to visit Laura Walker, aged 22, as patient. He visited her at her home, which was not the home of the decedent. Upon his visit, he found there Kathleen Walker and Miss Williams, who were attending the patient. Kathleen Walker was the sister-in-law of the patient, and mother of the deceased child. The tablets prescribed were by him placed in a china cup, and set upon an ordinary table, 28 inches high, at the bedside of the patient. After directing that one tablet should be given every four hours, the defendant left. Sometime during the evening, the patient was moved from that room into another, where she slept that night. Kathleen Walker slept with her and attended her. The tablets were left in the china cup upon the table in the room occupied by the patient when the defendant visited her. Kathleen Walker gave the patient two of the tablets only. These were given at 7:30 and at

11:30. Their effect seemed to be sufficient so that she refrained from further use of them. At 9:30 o'clock on the next morning, the father of the child discovered her in a chair at the table where the tablets were, and discovered that she had eaten all that were left, save two. Within a half hour, she was taken violently ill, and died within an hour. Each tablet contained one sixtieth of a grain of strychnine. The medical testimony is undisputed that the tablet is one in common use. The medical witness for the plaintiff testified that it would take six or seven of them to cause the death of a child.

The theory of the argument on behalf of the plaintiff is that it was the act of the defendant that put the tablets upon the table, and that they had at all times continued in the place where he put them; that they were pink tablets, and therefore attractive to a child; that he failed to warn the attendants that they were dangerous, or that they contained poison. This is the conduct upon which the charge of negligence is predicated against the defendant. The argument is that, in putting the pink tablets in the china cup, and leaving the same upon the table within the possible reach of the child, he exposed her to a danger which he ought to have foreseen, and against which he ought to have guarded. The contention for the defendant is that he was guilty of no negligence in what he did, and that his action in the premises was not, in a legal sense, the proximate cause of the accident to the child. Defendant unsuccessfully moved, at the close of the evidence, for a directed verdict. The more important question now presented for our consideration is, Does the evidence disclose any negligence on the part of the defendant?

In order to get a clear perception of the real nature and extent of the charge of negligence, a process of elimination may be helpful.

The case presented is not one where the defendant owed a special duty to the injured party, and failed to perform that duty. The child was not his patient. She was not under his care, custody, or control.

Neither is the case one where the defendant so gave or delivered to a third person a dangerous substance, with a mutual intent that such person might sell, give, or deliver the same to

other persons, at his discretion. The delivery of the tablets by the defendant to Mrs. Walker was for a specific purpose, and for the limited use of a specific person, not the deceased.

Neither is it a case where the defendant delivered to a third person a dangerous substance, without warning of its danger, and where such third person, in ignorance of its dangerous character, innocently gave or delivered it to the injured party. The child did not receive the tablets through the will or by the intent of Mrs. Walker, nor through any belief on the part of Mrs. Walker that the child could take the same without danger. The child took the tablets without the knowledge of either parent, and would not have been permitted by the parents to take them to any extent, if they had known that she was about to do so. This is undisputed.

Neither is it a case where the defendant exposed and abandoned a dangerous substance, leaving it in the care and custody of no one, but exposed to the possible contact of anyone who might chance upon it. With these eliminations, we turn to the case affirmatively as it is.

The theory of plaintiff, as argued, is buttressed upon two major propositions:

1.  That it was negligent for the defendant to put the tablets in a cup and to leave the cup upon the table on the evening of April 4th, and that his responsibility for such act continued as long as the tablets remained where he left them.

2.  That defendant was negligent in that he failed to warn Mrs. Walker that the tablets, if taken by her child, would be injurious and dangerous to her.

If, instead of setting the cup upon the table, the defendant had placed it in the hand of Mrs. Walker or of the other attendant, this circumstance would wholly undermine the argument on the first proposition. In legal effect, the cup with its contents *was* put in the care, custody, and control of Mrs. Walker as effectively by the method adopted as by any other conceivable method. It was at her hand and in her care. In order to carry out the instructions of the defendant to give the contents to the patient in doses of one tablet every four hours, she must necessarily lay her hand to the cup and assume control of it. In this

connection, reference may be had to Instruction IX, given by the trial court, as follows:

"*It is established by the uncontradicted evidence that the tablets in question were delivered into the custody and control of Mrs. Kathleen Walker, mother of Louise Walker, deceased, and Miss Doris Williams, by the defendant, W. B. Chase.* And in the event that you find that said tablets contained drugs that were dangerous and harmful to the human system, and that the said Mrs. Kathleen Walker and Miss Doris Williams, or either of them, prior to any injury, if any occurred therefrom, knew that said tablets contained drugs which were dangerous to the health and life of Louise Walker, then and in that event there would be no negligence on the part of the defendant in delivering said tablets to said parent or adult person; and if you so find, you will return a verdict for the defendant."

It will be noted from the foregoing that the court peremptorily instructed that the act of the defendant amounted to a delivery of the tablets to Mrs. Walker. Whether right or wrong, this part of the instruction became the law of the case, for the purpose of the trial. It was not wrong. Whatever other argument there may be, therefore, to sustain the liability of the defendant, it must be said that the care, custody, and control of the cup with its contents passed to Mrs. Walker on the evening of April 4th; and that, from that time forward, she, and not the defendant, was responsible for whatever method of care, custody, and control she chose to adopt. Up to this point, there is no evidence of negligence on the part of the defendant, unless it can be predicated upon the second proposition above stated. The defendant might have said to Mrs. Walker:

"Do not give these tablets to your child. They would be dangerous. One tablet is the proper dose for an adult. More would be harmful. Several would be dangerous. A dose for a child 18 months old should not be more than one half or one third of a tablet. More would be harmful. To eat several would be fatal."

If this conversation had occurred, it would have wholly undermined the argument on the second proposition; and yet such conversation would have disclosed nothing not already known by Mrs. Walker. She knew that one tablet was a suffi-

cient dose for an adult. She knew that it would be dangerous for the child to eat any of them, and that it would be dangerous to an adult to eat all of them in one dose. She was not misled into administering the tablets to the child. She would not have permitted the child to take any of them, if she had known that the child was about to do so. That is conceded in the evidence. The taking by the child could not have occurred in the presence of any of the adults, because none of them would have permitted it. The child was enabled to get them only because the adults had become separated from the place where they were left, and the ingenious child utilized the ever-present chair. A warning to the child would have been ineffective, and therefore impossible. A formal warning to the mother would have been a mere formality, which would have added nothing to the knowledge she already had,—that it would be extremely dangerous for a child eighteen months old to swallow ten or a dozen adult doses of medicine. Though the petition charges a failure to label the tablets, it is not claimed that the failure to do so is a violation of the statute. It is urged as a circumstance on the question of negligence.

Referring again to Instruction IX, above quoted, it will be seen that the whole case was therein succinctly presented. In one respect, it was technically erroneous, in that it implied that the burden of proof was on the defendant, to show that Mrs. Walker knew that the tablets contained drugs that were dangerous to the health and life of Louise Walker. On this question, the burden was on the plaintiff—not on the defendant. On this record, the error would not be very material. That Mrs. Walker had reason to believe and did believe that such tablets were dangerous to the life and health of her child, and that she would not have permitted the child to have had any of them, if she had known the child's contact with them, is beyond question. She testified as follows:

"I didn't see her get them. If I had, she wouldn't have got them. * * * Well, we all know that medicine is not for children to have, of course."

The case is unique, in that it has no precedent as an authority. We have examined the authorities cited in the excellent

brief of appellee, and find none that can fairly be called an authoritative precedent in support of recovery herein.

It is our conclusion, therefore: (1) That the record discloses no evidence of negligence on the part of the defendant, and that the defendant's motion for a directed verdict ought to have been sustained; (2) that the verdict is contrary to Instruction IX.    The judgment below will, accordingly, be reversed.—*Reversed and remanded.*

Stevens, C. J., Arthur and Faville, JJ., concur.